IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>AU OPTRONICS CORPORATION, et al.,<br><br>    Defendants<br>_____ / | No. C-03-4244 MMC<br><br>**ORDER DENYING IN PART AND CONTINUING IN PART DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court are two motions for partial summary judgment filed by defendants. Plaintiff has filed opposition to each motion, and defendants have filed replies. The matters came on regularly for hearing June 10, 2005. Having considered the papers filed in support of and in opposition to the motions, and the arguments of counsel, the Court rules as follows.

**I. Defendants' Motion Re: Sales Outside United States**

Defendants are not entitled to summary judgment on plaintiff's damages claims arising from sales defendants made outside the United States to customers who, in turn, import or sell allegedly infringing products in the United States.

First, contrary to defendants' argument, plaintiff has offered sufficient evidence to create a triable issue of fact as to defendants' intent to induce their customers located outside the United States ("non-U.S. customers") to sell infringing products in the United

1  States. Specifically, plaintiff has offered evidence that defendants, with knowledge of
2  plaintiff's patents, marketed their allegedly infringing component products to U.S.
3  companies interested in purchasing finished products incorporating such components,
4  (see, e.g., Harris Decl., filed May 20, 2005, Ex B at 13, 17-18, Ex. D at 10-11, Ex. CC at 9),
5  and that defendants sold such allegedly infringing component products to non-U.S.
6  companies, knowing those non-U.S. customers intended to incorporate defendants'
7  component products into the finished products those non-U.S. companies sell directly to
8  the above-referenced U.S. companies, (see, e.g., Strickland Decl., filed May 20, 2005, Ex.
9  D at 18-19).

10         Second, contrary to defendants' argument, plaintiff is not estopped from offering
11 expert testimony to calculate by means of approximation the number of infringing products
12 sold in the United States by parties who purchased, outside the United States, accused
13 component products from defendants; in particular, plaintiff did not previously assert an
14 "inconsistent position" regarding the manner by which it could prove the amount of such
15 sales. See Humetrix, Inc. v. Gemplus S.C.A., 268 F. 3d 910, 917 (9th Cir. 2001) (holding
16 doctrine of judicial estoppel precludes party from "asserting inconsistent positions in the
17 same litigation"). Plaintiff's previous statement that it could "only" obtain the actual number
18 of sales from the sellers directly, (see, e.g., Fox Decl., filed May 7, 2005, Ex. 4 at 4), is not
19 inconsistent with plaintiff's current position that, in the absence of plaintiff's having obtained
20 evidence from the sellers directly, plaintiff can rely on market research data to approximate
21 the number of such sales, (see, e.g., Strickland Decl. Ex. A ¶¶ 52-56).

22         Finally, defendants have failed to offer evidence, from an economist or otherwise, to
23 support their argument that the methodology employed by plaintiff's damages expert, Allyn
24 D. Strickland, is not reliable under the test set forth in Daubert v. Merrell Dow
25 Pharmaceuticals, Inc., 509 U.S. 579 (1993). See Imonex Services, Inc. v. W.H.
26 Munzprufer Dietmar Trenner GmbH, — F. 3d —, 2005 WL 1204855 (Fed. Cir. 2005)
27 (holding, where plaintiff "did not present any competent testimony of its own" to support
28 argument defendant's opinion was "unreliable" under Daubert, district court did not err by

admitting testimony of defendant's expert).

## II. Defendants' Motion Re: Infringement/Invalidity

### A. United States Patent 4,649,383 ("'383 Patent")

In light of defendants' pending motion to strike certain evidence offered by plaintiff in support of plaintiff's opposition to this portion of the instant motion, the hearing with respect to the merits of plaintiff's infringement claim is continued to July 1, 2005, the date set for hearing on defendants' motion to strike.

### B. United States Patent 5,028,122 ("'122 Patent")

#### 1. Infringement

Defendants contend that plaintiff cannot establish defendants' products infringe certain claims of the '122 Patent.

Because defendants' argument is based on defendants' proposed construction of "gate line," the Court first construes that term." Plaintiff argues that "gate line" should be construed according to its ordinary meaning, which, plaintiff submits, is "a conductor that connects a plurality of gate electrodes." (See Pl.'s Opp., filed May 20, 2005, at 10:16-17). Defendants do not argue that "gate line" has an ordinary meaning different from that proffered by plaintiff; rather, defendants argue that in the instant patent, the proper construction includes an additional limitation that the "gate line" is a "separate" component from the gate electrode. (See Defs.' Mot., filed May 6, 2005, at 10:21-22).

Defendants, in support of their argument that gate lines are "separate" components from gate electrodes, rely primarily on language in claim 1 providing for "gate lines each connecting a plurality of said gate electrodes." See '122 Patent, col. 5, lines 35-37. To the extent the word "connect" might suggest gate lines and gate electrodes are separate components, the specification, which is the "single best guide to the meaning of a disputed term," see Vitronics Corp. v. Conceptronic, Inc., 90 F. 3d 1576, 1582 (Fed. Cir. 1996), suggests otherwise. See id. (holding "specification is always highly relevant to the claim construction analysis"). Specifically, the figures illustrating the preferred embodiment show the gate line as an extension of the gate electrode and without a break between them. See

3

'122 Patent, Figure 1a. Consistent therewith, the specification states that the gate electrode "can include a gate line." See id., col. 4, lines 14-16. In other words, the specification teaches that the gate line and gate electrode are not two "separate" components.

Such construction is supported by the prosecution history, in which the applicant, while discussing claims later allowed as claims 8 and 15, used the terms "gate line" and "gate electrode" interchangeably. (See Dang Decl., filed May 6, 2005, Ex. 3 at SHC 000894.)[1] Such construction is further supported by the only extrinsic evidence offered as to the meaning of the two terms to those skilled in the art. Specifically, plaintiff's expert testified that "a particular part of the gate metal may be part of both a gate electrode and a gate line." See Silzars Decl., filed May 20, 2005, ¶ 23; Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F. 3d 1298, 1309 (Fed. Cir. 1999) (observing district court may consider extrinsic evidence "to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field").[2]

Accordingly, the Court construes "gate line" to mean "a conductor that connects a plurality of gate electrodes."

Because defendants' motion for summary judgment on the issue of infringement of the '122 Patent is dependent on the Court's accepting defendants' proposed construction of "gate line," defendants are not entitled to summary judgment on the issue of infringement of the '122 Patent.

---

[1] The applicant stated as follows: "Further, with regard to claims 13 and 20, each gate line overlaps the periphery[y] of a plurality of adjacent picture element electrodes, to thereby minimize light from leaking from each of the picture element electrodes. The area where each of the picture element electrodes overlaps each of the gate electrodes is preferably, as claimed in claims 13 and 20, located in a long, narrow strip fashion on the outskirts of the picture element electrodes." (See id.) (emphasis added).

[2] Defendants do not offer any extrinsic evidence, from their expert or otherwise, to support a finding that persons skilled in the art would understand "gate line" and "gate electrode," as those terms are used in the '122 Patent, to refer to two separate components.

4

**2. Invalidity**

Defendants, alternatively, seek summary judgment on their affirmative defense and counterclaim that claims 1, 4, 7, 9, and 10 of the '122 Patent are invalid. Defendants, however, have failed to establish, as a matter of law, any such claims are invalid.

First, as to claim 9, defendants have failed to show that, as a matter of law, such claim is anticipated by or obvious from Japanese Patent Publication 60-230118 to Oota ("Oota"). Although plaintiff's expert testified that a device illustrated in Oota includes the same elements as those set forth in claim 9, (see Dang Decl. Ex. 18 at 114:2-118:16), defendants have not offered any expert opinion to support a finding that the manner in which claim 9 discloses the arrangement of those elements is disclosed in or obvious from Oota. See Biotec Biologische Naturverpackungen Gmbh & Co. KG v. Biocorp, Inc., 249 F. 3d 1341, 1353 (Fed. Cir. 2001) (affirming district court's finding patent was valid where defendant failed to offer expert opinion as to why prior art references rendered patent invalid; rejecting defendant's argument that "district court should have read the cited references and determined for itself whether they could invalidate the [plaintiff's] patents").[3]

Second, as to claims 1, 4, 7, and 10, defendants have failed to show that, as a matter of law, any of such claims is invalid as anticipated by or obvious from Oota, the Luo 1985 article, or U.S. Patent No. 4,955,697, for the reason that plaintiff has offered sufficient evidence from which a trier of fact could conclude such prior art references do not invalidate claims 1, 4, 7, or 10. (See Silzars Decl. ¶¶ 33-63.) Moreover, even if such evidence had not been offered by plaintiff, defendants, as with claim 9, would not be entitled to judgment, for the reason that defendants have not offered any expert opinion in support of their invalidity argument. See Biotec Biologische Naturverpackungen, 249 F. 3d

---

[3] As defendants point out, plaintiff does not argue in its opposition that claim 9 is valid. Plaintiff's lack of argument, however, does not warrant entry of summary judgment. See Martinez v. Stanford, 323 F. 3d 1178, 1182-83 (9th Cir. 2003) (holding moving party not entitled to summary judgment, even if no opposition filed, unless moving party establishes lack of triable issues). This is particularly true as to a claim of invalidity because a patent holder does not have the initial burden to prove validity. See 35 U.S.C. § 282 ("A patent shall be presumed valid.")

5

1  at 1353.

2  **C.  United States Patent 5,280,372 ("'372 Patent")**

3  Defendants argue that certain of the accused products do not infringe the '372
4  Patent because such products lack one of the required components, specifically, a "slide
5  mechanism."

6  Each claim of the '372 Patent includes a limitation that the invention has a "slide
7  mechanism for allowing [a] reflector to be slidably detached from [a] light transmitting
8  plate." See '372 Patent, col. 4, lines 6-7.  Defendants acknowledge that plaintiff's expert
9  testified he was personally able to, or witnessed others, slidably detach a reflector located
10 in defendants' accused products, after metal tabs in the accused products were bent back
11 or removed and/or after screws in such products were removed.  (See, e.g., Presta Decl.,
12 filed May 20, 2005, Ex. 2 at 329-331.)  Defendants argue, however, that bending tabs
13 and/or removing tabs or screws from the accused products constitutes an impermissible
14 modification of the product.  See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F. 3d
15 1316, 1330 (Fed. Cir. 2001) (holding evidence accused product was "capable of being
16 modified" to operate in infringing manner insufficient to support finding of infringement).

17 As pointed out by plaintiff at the hearing, the figures illustrating the preferred
18 embodiment of the device claimed in the '372 Patent show the claimed device has screws
19 to hold the components, including the reflector, in place, see '372 Patent, Fig. 3, and that,
20 to remove the slidably-detachable reflector, the outer frame with tabs must be removed
21 from the device, see id., Fig. 4.  In other words, the preferred embodiment itself includes
22 tabs and/or screws that retain the reflector in place, and must be bent or removed before
23 the reflector can be "slidably detached."  Consequently, evidence that the reflector in the
24 accused products cannot be removed without bending tabs and/or removing tabs or screws
25 is insufficient to establish, as a matter of law, that the accused products are non-
26 //
27 //
28 //

1  infringing.[4]

2  Accordingly, defendants are not entitled to summary judgment on the issue of
3  infringement of the '372 Patent.

### D.  United States Patent 5,335,102 ("'102 Patent")

5  Defendants are not entitled to summary judgment on their affirmative defense and
6  counterclaim that claim 1 of the '102 Patent is invalid as anticipated by either Japanese
7  Patent Publication 59-101693 or Japanese Patent Publication 64-48037, for the reason that
8  plaintiff has offered sufficient evidence from which a trier of fact could conclude such prior
9  art does not invalidate claim 1.  (See Fonash Decl., filed May 20, 2005, ¶¶ 17-34.)
10 Moreover, even if such evidence had not been offered by plaintiff, defendants would not be
11 entitled to summary judgment, having failed to offer any expert opinion in support of their
12 invalidity contentions.  See Biotec Biologische Naturverpackungen, 249 F. 3d at 1353 ("It is
13 not the trial judge's burden to search through lengthy technologic documents for possible
14 evidence.").

15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //

---

[4]The object of the claimed invention, as set forth in the specification, is to provide a liquid crystal device in which it is "easy to exchange a built-in light source."  See id., col. 1, lines 34-36.  To the extent defendants argue that the tabs and/or screws employed in the accused products function to make exchange of the reflector difficult, such argument does not entitle defendants to summary judgment, in light of the testimony of plaintiff's expert that it was not "difficult" to bend tabs and/or remove tabs and screws in the accused products.  (See Presta Decl., filed May 20, 2005, Ex. 2 at 331:9-20.)

7

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion for partial summary judgment on the issue of non-U.S. sales is hereby DENIED.

2. Defendants' motion for partial summary judgment on the issues of infringement and invalidity is hereby DENIED, to the extent the motion pertains to the '122, '372 and '102 Patents. To the extent the motion pertains to the '383 Patent, the hearing on the motion is CONTINUED to July 1, 2005, at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: June ___, 2005
       /s/ Maxine M. Chesney
       MAXINE M. CHESNEY
       United States District Judge